IN THE UNITED STATES COURT OF APPEAL
FOR THE ELEVENTH CIRCUIT

CASE NO. 23-11791

TANIA MARIA LOPEZ,

     Appellant,

vs.

COSTCO WHOLESALE CORP.,

     Appellee.

---

## APPELLANT'S INITIAL BRIEF

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**EATON & WOLK, PL**
**BY:** **DOUGLAS F. EATON**
     **FBN:0129577**
     **DANIEL R. SCHWARTZ**
     **FBN: 124512**
*Attorneys for Appellant*
2665 So. Bayshore Drive, Suite 609
Miami, FL 33133
Telephone: (305) 249-1640
Telecopier: (786) 221-2009
Email: deaton@eatonwolk.com
     dschwartz@eatonwolk.com

CASE NO: 23-11791
TANIA MARIA LOPEZ v. COSTCO WHOLESALE CORP.

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

1. Tania Maria Lopez, Plaintiff

2. Costco Wholesale Corporation

3. Douglas F. Eaton, Esq.

4. Eaton & Wolk, PL

5. William C. Ruggiero Esq.

6. Law Offices of William C. Ruggiero

7. Magistrate Judge Jacqueline Becerra

8. Honorable Jose M. Martinez, United States District Judge

s/ Douglas F. Eaton
Douglas F. Eaton
FBN 0129577

**STATEMENT REGARDING ORAL ARGUMENT**

Because of the fact specific nature of this appeal, Appellant's counsel believes that our familiarity with the record could be helpful in aiding the Court in making its decision. Therefore, we would welcome the opportunity for oral argument.

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS...................................................................i

TABLE OF CITATIONS ............................................................. iii

I.    STATEMENT OF JURISDICTION .........................................1

II.   STATEMENT OF THE ISSUES ON APPEAL ...........................1

III.  STATEMENT OF THE CASE ...............................................1

IV.   STATEMENT OF THE FACTS ..............................................2

      A. THE MEDICAL RECORDS IN EVIDENCE CONTAINED
         CAUSATION OPINIONS..................................................3

      B. DR. FIGUEREO'S TESTIMONY ........................................5

V.    SUMMARY OF THE ARGUMENT .........................................9

VI.   ARGUMENT...................................................................10

      A.    SUMMARY JUDGMENT STANDARD.................................10

      B.    THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE
            JURY'S FINDING OF CAUSATION .........................................11

            1.  THE MEDICAL RECORDS OF TANIA LOPEZ ARE
                EVIDENCE THAT HER INJURIES WERE CAUSED BY
                THE SLIP-AND-FALL INCIDENT AT COSTCO......................11

            2.  THE MEDICAL RECORDS ALONE WERE SUFFICIENT
                TO SUPPORT THE JURY'S VERDICT ..................................12

EATON & WOLK

C.    THE DISTRICT COURT IMPROPERLY FAILED TO INCLUDE
DR. FIGUEREO'S CAUSATION TESTIMONY IN THE EVIDENCE
SUPPORTING THE JURY'S VERDICT ........................................................16

    1.  DR. FIGUEREO'S CAUSATION TESTIMONY WAS
    NEVER STRUCK FROM CONSIDERATION BY THE JURY ......................16

    2.  DR. FIGUEREO'S TESTIMONY WAS ADMISSIBLE ..............................18

VII.  CONCLUSION ...........................................................................................22

CERTIFICATE OF COMPLIANCE ...........................................................23

CERTIFICATE OF SERVICE ....................................................................23

# TABLE OF CITATIONS

Page

*Baker v. Taco Bell Corp.,*
  163 F.R.D. 348 (D.Colo.1995) ...........................................................20

*California Ins. Guarantee Ass'n v. Burwell,*
  227 F. Supp. 3d 1101 (C.D. Cal. 2017) ...............................................12

*Carter v. City of Miami,*
  870 F.2d 578 (11th Cir.1989) .........................................................10, 11

*Fielden v. CSX Transp., Inc.,*
  482 F.3d 866 (6th Cir. 2007) .........................................................18, 19

*Lozano v. Knudson,*
  687 Fed. Appx. 530, (Mem)–531 (9th Cir. 2017) ...............................13

*MacPherson v. University of Montevallo,*
  922 F.2d 766 (11th Cir.1991) .............................................................10

*Mangla v. University of Rochester,*
  168 F.R.D. 137 (W.D.N.Y.1996)..........................................................21

*Martin v. CSX Transp., Inc.,*
  215 F.R.D. 554 (S.D.Ind.2003)............................................................19

*McCloughan v. City of Springfield,*
  208 F.R.D. 236 (C.D.Ill.2002) ............................................................19

*Nanda v. Ford Motor Co.,*
  509 F.2d 213 (7th Cir. 1974) ..............................................................17

*Piper v. Harnischfeger Corp.,*
  170 F.R.D. 173 (D.Nev.1997).............................................................20

*Piscopo v. Sec. of Health and Human Servs.,*
  66 Fed. Cl. 49 (2005) .........................................................................13

*Powell v. Nat'l Bd. of Med. Examiners*,
   364 F.3d 79 (2d Cir. 2004)................................................................12

*Renart v. Rasier*, LLC,
   2022 WL 19516917 (D. Mass. May 9, 2022).......................................14

*Renart v. Raiser, LLC*,
   2023 WL 2553966 (D. Mass. Mar. 17, 2023) .....................................14

*Salas v. U.S.*,
   165 F.R.D. 31 (W.D.N.Y.1995).........................................................20

*Shapardon v. W. Beach Estates*,
   172 F.R.D. 415 (D. Haw. 1997).........................................................20

*Tanner v. United States*,
   401 F.2d 281 (8th Cir.1968) .............................................................17

*Univ. of Florida v. KPB, Inc.*,
   89 F.3d 773 (11th Cir. 1996) ............................................................10

*United States v. Polito*,
   856 F.2d 414 (1st Cir.1988)..............................................................17

*United States v. Zaccaria*,
   240 F.3d 75 (1st Cir. 2001)...............................................................16

*Williams v. Captain D's, LLC*,
   2008 WL 1745189 (S.D. Miss. Apr. 11, 2008) ..................................13

*Wreath v. U.S.*,
   161 F.R.D. 448 (D.Kan.1995)...........................................................20

# AUTHORITIES

Fed.R.Civ.P. 26(a)(2)(B) .................................................3, 8, 10, 18, 20

Fed. R. Evid. 103 ...........................................................................16

28 U.S.C. § 1291 .............................................................................1

28 U.S.C. § 1332.............................................................................1

# I.   STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1332, as a civil case of diversity jurisdiction. This Court has jurisdiction pursuant to 28 U.S.C. § 1291, which permits appeals from final decisions rendered by district courts.

# II.   STATEMENT OF THE ISSUE ON APPEAL

DID THE DISTRICT COURT ERR IN GRANTING DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT BASED ON LACK OF CAUSATION WHEN PLAINTIFF INTRODUCED MEDICAL EVIDENCE AND TESTIMONY FROM PLAINTIFF'S TREATING PHYSICIANS ESTABLISHING INJURY CAUSATION?

# III.   STATEMENT OF THE CASE

On April 8, 2020, Plaintiff Tania Marie Lopez was shopping on the premises of Defendant Costco when she slipped on dirty, smashed grapes. (App.12)[1] Plaintiff injured her knee and back and sought medical treatment from Dr. Santiago Figuereo. (App.59) On March 18, 2021, Plaintiff filed a Complaint against Costco in state Court which was subsequently removed by Costco to the Southern District based on diversity jurisdiction. (App.12) The case proceeded to trial on June 28, 2022, and the jury rendered its verdict on June 30th, 2022, in favor of Plaintiff in the amount of $155,000.00. (DE.60)

On July 8, 2022, Costco filed its Motion for Judgment as a Matter of Law and

---

[1] Appendix references will be designated (App._).  Docket entries will be referred to as (DE.__)

for New Trial. (App.162) Costco's made a number of arguments but the one relevant to this appeal was that Plaintiff failed to establish that the injuries she claimed were caused by the negligence of Costco. (App.167) This argument was predicated on the district court's exclusion of Dr. Figuereo's testimony related to injury causation. (App.168) Specifically, Costco argued that "the record is devoid any testimony or evidence of how Plaintiff sustained the alleged herniations in her neck or low back." (App.168)

On November 10, 2022, the district court granted Costco's Motion, holding that, because it had precluded Dr. Figuereo's causation testimony during trial, Plaintiff had failed to establish injury causation. (App.192) The district court further held that the testimony that Dr. Figuereo did offer was insufficient to establish causation. (App.194) Although the district court briefly mentioned the causation opinions set forth in the medical records, the district court neither struck those opinions nor considered their significance. (App.193) The district court entered final judgment in favor of Costco on May 18, 2023. (App.198)This timely appeal follows. (App.196)

## IV. STATEMENT OF THE FACTS

Prior to trial, Costco listed the full medical records of Alliance Spine and Joint as one of its intended trial exhibits. (App.136) These records contained causation opinions formed by Dr. Figuereo as well as another physician at the same facility,

Dr. Starry, linking Plaintiff's back and knee injuries to Ms. Lopez's fall at Costco's premises. (App.139, 143, 145, 149, 160)

Also prior to trial, Costco filed a motion in limine asking to preclude Dr. Figuereo from testifying on causation because he hadn't provided a Rule 26(a)(2)(B) expert report. (App.21) The district court denied the Motion without prejudice, indicating that it would address the issue at trial. (App.28) At no point did Costco ever argue against the introduction of the medical records from Alliance Spine and Joint or the causation opinions contained therein. The records came into evidence in their entirety by agreement of the parties. (App.127)

A.    THE MEDICAL RECORDS IN EVIDENCE CONTAINED CAUSATION OPINIONS.

The Alliance Spine and Joint medical records contain the opinions of Ms. Lopez's treating physicians establishing that Ms. Lopez's fall at Costco was the cause of the injuries for which she was seeking treatment. Dr. Figuereo's operative report indicates that Plaintiff suffered "acute pain due to a slip and fall and traumatic herniated discs in cervical and lumbar spine." (App.139)  Dr. Figuereo's history and physical identified the mechanism of Ms. Lopez's injury as a "slip and fall," specifically indicating that she "fell at Costco." (App.143)

Dr. Figuereo authored a separate report which included the following impression linking Ms. Lopez's neck and back injuries to her traumatic fall at

Costco:

> The patient's status post traumatic injuries sustained as a consequence of the accident mentioned above. She comes to the office for evaluation of neck and lower back pain after a slip and fall at Costco. She slipped over grapes on the floor and twisting her neck and lower back. Examination findings do reveal specific neurological dysfunction that is consistent with the patient present subjective complaints and/or reported functional loss.

(App.145)

On June 27, 2020, Dr. Figuereo performed lumbar and cervical branch blocks and epidural injections on Ms. Lopez. (App.139) At a post-operative visit on July 10, 2020, Dr. Figuereo offered the following opinion on the cause of Ms. Lopez's injuries in his report:

> Based on my clinical evaluation and my review of the available prior medical records, medical history, post-accident medical condition as per documented on medical records, diagnostic studies, photographs of event and or injuries and any other documents available, it is my impression, within reasonable degree of medical certainty that all the patient's symptoms are a direct result of the injuries sustained as a consequence of the accident. These injuries are permanent within a reasonable degree of medical certainty and a direct result of the reported accident.

(App.145)

Ms. Lopez was also seen by Dr. Amy Starry, a knee specialist at Alliance Spine and Joint. On May 13, 2020, Dr. Starry offered her opinion that Ms. Lopez's knee injury was caused by her fall at Costco:

> After reviewing the patient's history, physical examination and

4

mechanism of injury, it is in my professional opinion that the patient's symptomatology and/or injuries were caused by the slip and fall of 4/8/2020.

(App.149)

Costco agreed to the admission of these records into evidence. The jury considered this evidence in reaching a verdict in Plaintiff's favor. (App.118,128)

## B.   DR. FIGUEREO'S TESTIMONY

Even though the opinions set forth medical records were sufficient to support the jury's finding of injury causation, the testimony that Dr. Figuereo was allowed to offer further supported the jury's verdict.  First, Dr. Figuereo described why it was important for him to know the cause of Ms. Lopez's injuries:

A. As per my medical records, it seems that I saw her first on April 15, 2020.

Q. And what brought her in to see you?

A. I understand she came to see us because of neck pain and lower back pain after a slip and fall that she sustained, I believe it was about a month before the visit.

Q. That would be April 8, 2020?

A. That is correct.

Q. So about a month or five weeks. What were Tania's complaints when she came to see you?

A. She was complaining of neck and lower back pain. She was complaining of some knee pain as well. Obviously what related to our expertise was to focus to try to find out why she was complaining of

the neck and back pain.

(App.58)

Dr. Figuereo then went through each of Plaintiff's injuries, detailing how they are commonly associated with traumatic incidents like the fall at Costco. Dr. Figuereo started with Plaintiff's limited range of motion and muscle spasms in the cervical and lumbar spine:

> There was significant limitation to mobility with pain elicited in the cervical and lumbar spine. There was (sic) spasms that were positive in the cervical spine, and that is muscles that were continuously contracted. So when you touch it, they were very tight and even asking the patient to relax those muscles will not relax, and that's a response that we see normally when there is traumatic injuries or an acute lesion.

(App.61)

Dr. Figuereo also testified that he performed injections in the sacroiliac joints and spine to numb the pain in nerves that are commonly injured during falls of the type Ms. Lopez had at Costco:

> We also did inject the sacroiliac joints, which are big joints into the lumbar sacral area where your back basically joins your pelvis, and that's a big joint that normally with any sudden shaking and falls or whiplash injuries gets significantly affected. And for people -- and I believe that we did also an occipital nerve block, which is a little nerve that goes from the neck into the base of the skull and normally cause headaches in people who have these kind of whiplash injuries. We also numb those nerves at the time.

(App.70-71)

Dr. Figuereo also detailed how Plaintiff's annular tears in the lumbar spine

are commonly associated with traumatic events:

> Q. One thing that is noted that you discussed are annular tear in the lumbar spine. Are annular tears more commonly associated with something from trauma or from degeneration?

> A. They're most commonly seen on trauma.

(App.110)

In other words, Dr. Figuereo explained how the injuries that Plaintiff suffered were caused by the only trauma that Plaintiff experienced – the fall at Costco. Dr. Figuereo further illuminated the importance of knowing the cause of the injury. He explained that the cause of the injury determines the type of treatment provided to the patient because traumatic injuries are treated differently than chronic ones. (App.72) He analogized this to triaging a patient for trauma to determine whether they need to go to a trauma bay or the regular emergency room. (App.72) Dr. Figuereo testified that the approach he used in treating Ms. Lopez was the approach he typically used to alleviate pain in trauma patients. (App.109) All of this testimony was admitted without objection from Costco.

During Dr. Figuereo's testimony, Defendant Costco raised a single objection after the following question and answer:

> Q. Do you have an opinion as to the cause of Ms. Lopez's injuries that you treated her for?

> A. Based on the information that I had available at the time of treatment and until now, I don't have any more information beyond what we have

discussed, because her symptoms started immediately after a trauma and the treatment subsequently was following those symptoms, more likely than not I have to make the opinion that these injuries, the injury of the trauma is what caused her to feel the way that she felt when she saw me.

MR. BACA: Objection, Your Honor. Just goes beyond his area of expertise and it's lacking foundation.

(App.73)

Costco's objection was made after Dr. Figuereo's testimony was elicited in front of the jury. Costco neither moved to strike the testimony nor asked the district court to instruct the jury to disregard the testimony. Costco then re-raised its argument from its Motion in Limine, arguing that Dr. Figuereo shouldn't be entitled to offer causation opinions because he didn't file a Rule 26(a)(2)(B) report. The district court held as follows:

I think he does allude to he needs to know that she had a trauma and he's already said that. He said she told him that, and that it was consistent with that. But anything further than that I think is getting into his expert opinion as to an expert as to causation, which I don't think is appropriate.

(App.77) The district court's ruling precluded Dr. Figuereo from testifying further as to causation, but it did nothing to prevent the jury's consideration of the causation opinion that Dr. Figuereo had already offered.

Finally, on cross-examination, Costco elicited that following causation opinion from Dr. Figuereo:

Q. In term of the mechanism of injury, how she fell, all it says there is she slipped and fell, and then it says they fell at Costco, correct?

A. It says that she fell that date. I think in the note later on yes, it says at Costco at the bottom.

(App.94) Of course, Plaintiff did not object to this testimony which was thus properly before the jury to consider in rendering its verdict.

During closing argument, Plaintiff's counsel repeatedly referred the jurors to the medical records of Alliance Spine and Joint, Dr. Figuereo, and Dr. Starry, reminding them that the records contained the opinions of the physicians as to what caused Plaintiff's injuries. (App.118) Plaintiff's counsel specifically indicated that the jury was going to take the records back with them to the jury room to consider during deliberation. (App.128)

## V.     SUMMARY OF THE ARGUMENT

In granting Defendant Costco's Motion for Judgment as a Matter of Law, the district court failed to consider that Plaintiff's medical records containing causation opinions was admitted by agreement of the parties. The medical records alone provided sufficient evidence to support the jury's finding that Plaintiff's injuries were caused by Ms. Lopez's slip-and-fall at Costco. Additionally, Dr. Figuereo's testimony regarding the cause of Plaintiff's injuries was largely unobjected to at trial and provided further support for the jury's verdict.

Further, Dr. Figuereo was allowed to offer causation opinion that mirrored the opinion set forth in his medical records. While Costco did raise an objection to the testimony after it had been given, preventing additional testimony if its type, Costco failed to move to strike the opinion, which means it remained before the jury. To the extent that the district court later struck that testimony when granting Costco's motion on the basis that Dr. Figuereo failed to provide a Rule 26 report, this was error. Dr. Figuereo was a treating physician and was not "retained or specially employed to provide expert testimony." Rule 26(a)(2)(B). Thus, the plain language of the Rule specifically eliminates the requirement that he provide a report with his opinions.

The Court should therefore reverse the District Court's order granting the Motion for Judgment as a Matter of Law and reinstate the jury verdict in the amount of $155,000.00.

## VI.   ARGUMENT

### A. STANDARD OF REVIEW

"Motions for directed verdict and judgment notwithstanding the verdict are subject to de novo review. Accordingly, we apply the same standard the district court must apply in determining whether to grant the motion." *Univ. of Florida v. KPB, Inc.*, 89 F.3d 773, 775 (11th Cir. 1996), *citing MacPherson v. University of Montevallo*, 922 F.2d 766, 770 (11th Cir.1991) and *Carter v. City of Miami*, 870

F.2d 578, 581 (11th Cir.1989). "If…substantial evidence is presented opposed to the motion, and this evidence is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion must be denied." *Id.*

## B. THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE JURY'S FINDING OF CAUSATION.

### 1. THE MEDICAL RECORDS OF TANIA LOPEZ ARE EVIDENCE THAT HER INJURIES WERE CAUSED BY THE SLIP-AND-FALL INCIDENT AT COSTCO.

The Defendant agreed to admit the medical records into evidence without objection. (App.136) There was never any written objection to the admission of the records, nor did they ever orally seek to exclude any part of those records or ask the Court to limit the opinions in the records. As a result, Costco waived any objection it could have had to the admission of these records. Because the records were properly admitted into evidence, the jury was entitled to rely on them in rendering a decision on causation.

Further, the Defendant never sought relief from the admission of these records in its post-trial Motion. (App.162) Instead, it merely argued that there was insufficient *testimony* to establish causation. (App.167) The district court did not substantively address the medical records in its Order granting the Motion other than to indicate that Dr. Starry was not disclosed as an expert pursuant to Rule 26. (App.193) But this is irrelevant because the medical records were admitted into

evidence by agreement. If Costco wanted to challenge the admissibility of the opinions in the records for the same reason it challenged the admissibility of the testimony on causation, it was required to raise that issue in its Motion.

The district court correctly did not provide any relief related to the medical records because none had been requested. Costco cannot now be heard to argue that the court's ruling with respect to Dr. Figuereo's testimony somehow covered the opinions set forth in the medical records because such relief would have been granted without notice to the Plaintiff. . A party is "prejudiced" if the court "grants relief not requested and of which the opposing party has no notice." *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir. 2004). *See also California Ins. Guarantee Ass'n v. Burwell*, 227 F. Supp. 3d 1101, 1116 (C.D. Cal. 2017).

To the extent that the Defendant had a meritorious argument with respect to the causation opinions contained in the medical records, it was waived when Costco submitted the full records into evidence by agreement.

### 2. THE MEDICAL RECORDS ALONE WERE SUFFICIENT TO SUPPORT THE JURY'S VERDICT.

It is indisputable that the causation opinions expressed in the records, had Dr. Figuereo been permitted to testify fully, would have been sufficient to support the jury's finding of causation. The fact that the opinions were contained in the records rather than offered as testimony does not change the outcome because evidence is

evidence, regardless of the form it takes. For example, in *Lozano v. Knudson*, 687 Fed. Appx. 530, (Mem)–531 (9th Cir. 2017), the Court considered whether medical records alone were sufficient to establish a genuine issue of material fact as to causation sufficient to deny a defendant's motion for summary judgment:

> Lozano's medical records, if considered, may well have enabled Lozano to establish a genuine issue of material fact as to causation. The medical records showed a six-month delay in Lozano's glaucoma treatment and that he was first diagnosed with partial blindness immediately after that delay. Lozano's treating ophthalmologist remarked in Lozano's medical records that he was partially blind and that her plan for Lozano's glaucoma treatment was "not followed[ ] [a]t all."

*Lozano v. Knudson*, 687 Fed. Appx. 530, 531 (9th Cir. 2017).

Because this is a relatively obvious proposition, there aren't many cases that directly discuss it. Instead, cases tend to acknowledge the proposition while holding it doesn't apply. For example, in *Piscopo v. Sec. of Health and Human Servs.*, 66 Fed. Cl. 49, 56 (2005), the Court noted "Where evidence of causation is not plain from the medical records, an expert opinion is needed to establish causation." The converse must also be true, when evidence of causation *is* plain from the medical records, an expert opinion is not needed to establish causation.

Similarly, in *Williams v. Captain D's, LLC*, 2008 WL 1745189, at *2 (S.D. Miss. Apr. 11, 2008), the district court noted:

> …and yet because plaintiff's medical records from her treating physicians do not link the foot injury to the fall at Captain D's and because plaintiff has failed to designate any medical witness in this

cause, she cannot prove the foot injury was caused by the fall at Captain
D's.

The clear implication here is that had such records existed, as they do in this case,

the plaintiff could have used them to establish injury causation.

In *Renart v. Rasier*, LLC, 2022 WL 19516917, at *6 (D. Mass. May 9, 2022),

*report and recommendation adopted sub nom. Renart v. Raiser, LLC*, 2023 WL

2553966 (D. Mass. Mar. 17, 2023), the district court acknowledged that medical

records could be sufficient to be meet the plaintiff's burden to prove causation, the

records in this case did not contain causation opinions::

> Renart states that she intends to introduce her medical records to
> demonstrate a causal relationship between the incident and her alleged
> injuries and argues that such records are sufficient to meet her burden to
> establish causation...Here, however, the medical records before the Court
> do not contain sufficient opinions on causation to meet Renart's burden.

Here, both Dr. Figuereo and Dr. Starry specifically cite the Plaintiff's fall at Costco

as the cause of her injury and further explained how her injuries and the treatment

she received were consistent with a traumatic fall.

 Dr. Figuereo's medical records not only set forth his opinion on causation, it

set forth the basis for his opinion and expressed his opinion within a reasonable

degree of medical certainty, just as he would have been required to do if testifying:

> Based on my clinical evaluation and my review of the available prior
> medical records, medical history, post-accident medical condition as per
> documented on medical records, diagnostic studies, photographs of
> event and or injuries and any other documents available, it is my

impression, within reasonable degree of medical certainty that all the patient's symptoms are a direct result of the injuries sustained as a consequence of the accident.

(App.160)

Dr. Starry offered her similar opinion with respect to Ms. Lopez's knee injury:

After reviewing the patient's history, physical examination and mechanism of injury, it is in my professional opinion that the patient's symptomatology and/or injuries were caused by the slip and fall of 4/8/2020.

(App.149)

This evidence was also entirely consistent with the testimony that Dr. Figuereo was allowed to provide. . Dr. Figuereo linked Plaintiff's muscle spasms in the cervical spine to the traumatic event – the fall. He explained that the injections he administered to the sacroiliac joints and the occipital were necessitated to treat the "whiplash" the injury Ms. Lopez sustained in the fall. Finally, he explained that the annular tears shown on the MRI were commonly associated with trauma, rather than a degenerative process. Dr. Figuereo's testimony was thus consistent with the causation opinions contained within his medical records. The testimony and the records were more than sufficient to support the jury's finding. As a result, a judgment notwithstanding the verdict based on a lack of causation evidence was improper.

**C. THE DISTRICT COURT IMPROPERLY FAILED TO INCLUDE DR. FIGUEREO'S CAUSATION TESTIMONY IN THE EVIDENCE SUPPORTING THE JURY'S VERDICT.**

**1. DR. FIGUEREO'S CAUSATION TESTIMONY WAS NEVER STRUCK FROM CONSIDERATION BY THE JURY.**

Under Fed. R. Evid. 103, the general principle that an objection should be made after a question has been asked but before an answer has been given. Here, Costco's counsel failed to object to Plaintiff's counsel's question "Do you have an opinion as to the cause of Ms. Lopez's injuries that you treated her for?" even though it plainly called for a causation opinion. (App.73) Instead, Costco's counsel waited until Dr. Figuereo had given his complete causation opinion before objecting. (App.73) While the delay did not render the objection untimely, it did create another problem for Costco, because the jury had now heard the causation opinion.

Costco's objection was sustained, and the district court prevented Dr. Figuereo from offering any further causation opinions, but the objection had no effect on the opinion he had already offered. If Costco's counsel wanted the jury to disregard that testimony, it was incumbent on them counsel to move to strike the testimony. Costco's failure to do so meant the testimony was before the jury. *See United States v. Zaccaria*, 240 F.3d 75, 82 (1st Cir. 2001) (Because witness "answered the question and the district court did not strike his negative response[,] [h]is denial was, therefore, before the jury," precluding reversal based on its

admission.); *United States v. Polito*, 856 F.2d 414, 419–20 (1st Cir.1988) (holding that testimony not stricken from the record may be regarded by the jury as evidence, notwithstanding parties' mutual, but mistaken, assumption that the court had stricken it); and *Tanner v. United States*, 401 F.2d 281, 290–92 (8th Cir.1968) (explaining, in analogous circumstances, that testimony not stricken "remained before the jury for [its] consideration" despite the sustaining of the opponent's objection);

The Seventh Circuit, in *Nanda v. Ford Motor Co.*, 509 F.2d 213 (7th Cir. 1974), addressed a similar scenario. There, an expert witness testified to an inadmissible opinion based on hearsay from a report. "When the witness said he had based his opinion in part on this report and started to testify about what the report said, counsel for defendant objected and the court sustained the objection." *Nanda* at 222. The Court noted that "counsel did not move to strike the opinion itself, which had been stated several questions and answers earlier." *Id.* The Court held that "[defendant] therefore cannot complain here of the court's failure to strike it. The court gave counsel all the relief he asked for." *Id.* Because Costco didn't request any additional relief related to this opinion until after the trial, the request was untimely, and it was error for the district court to essentially strike it well after the fact. This causation opinion is therefore part of the evidence this Court must consider in reviewing the propriety of the district court's decision to take away the jury's verdict.

## 2. Dr. Figuereo's testimony was admissible.

The district court's decision to limit Dr. Figuereo's testimony was erroneous. It follows that even if Costco had timely asked the district court to strike the causation testimony that was before the jury, striking that testimony would have been erroneous as well. In *Fielden v. CSX Transp., Inc*., 482 F.3d 866 (6th Cir. 2007), the Court explained why treating physicians like Dr. Figuereo do not need to provide a Rule 26(a)(2)(B) report. *Fielden* held that "by its terms [Rule 26(a)(2)(B)] provides that a party needs to file an expert report from a treating physician only if that physician was 'retained or specially employed to provide expert testimony.'" *Fielden v. CSX Transp., Inc*., 482 F.3d 866, 869 (6th Cir. 2007).,

In *Fielden*, the court concluded that "because there is evidence that [the treating physician] formed his opinions as to causation at the time that he treated Fielden and there is no evidence that [the treating physician] formed his opinion at the request of Fielden's counsel," the plaintiff did not hire his treating physician "for the purpose of providing expert testimony." *Fielden* at 869. The Court relied on the advisory committee note to Rule 26, which provides that "[a] treating physician … can be deposed or called to testify at trial without any requirement for a written report." Fed.R.Civ.P. 26(a), cmt. 1993 Amendments, subdivision (a), para. (2). *Id.* "Under a straightforward reading of the rule and its advisory note, *Fielden* did not need to file an expert report from [the treating physician]." *Id.*

The Court noted the "obvious fact that doctors may need to determine the cause of an injury in order to treat it," just as Dr. Figuereo testified to in this case. *Fielden* at 870. Thus, "[d]etermining causation may therefore be an integral part of 'treating' a patient." *Id*.

The *Fielden* court relied on *Martin v. CSX Transp., Inc*., 215 F.R.D. 554, 557 (S.D.Ind.2003) which, in permitting causation testimony without a prior expert report, reasoned:

> It is within the normal range of duties for a health care provider to develop opinions regarding causation and prognosis during the ordinary course of an examination. To assume otherwise is a limiting perspective, which narrows the role of a treating physician. Instead, to properly treat and diagnose a patient, the doctor needs to understand the cause of a patient's injuries.

*Fielden* at 870.

Numerous courts have followed *Fielden's* reasoning and allowed treating physicians to offer causation opinions without requiring the filing of an expert report. In *McCloughan v. City of Springfield,* 208 F.R.D. 236, 242 (C.D.Ill.2002), in allowing the a treating physician to offer an opinion on causation, the court noted that " [i]n order to properly treat and diagnose a patient, the doctor needs to know, establish, or reach a conclusion regarding the cause of the patient's injury."   The court then held that, as a result, opinions on  "causation, diagnosis, and prognosis would be based on the treating physician's personal knowledge."

The district court in *Shapardon v. W. Beach Estates*, 172 F.R.D. 415, 416–17 (D. Haw. 1997), similarly explained that "treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extended disability, if any, caused by the condition or injuries" and reiterated that these types of opinions did not need to be disclosed pursuant to Rule 26. *Shapardon* explained:

> The relevant question is whether these treating physicians acquired their opinions as to the cause of the plaintiff's injuries directly through their treatment of the plaintiff. If so, then they must be treated as treating physicians, who can be deposed under the amendments to Rule 26 but who cannot be forced to file the written report required by Rule 26(a)(2)(B). As a general rule, a treating physician considers not just the plaintiff's diagnosis and prognosis, but also the cause of the plaintiff's injuries.

*Shapardon* at 417, quoting *Salas v. U.S.,* 165 F.R.D. 31, 33 (W.D.N.Y.1995).

*Shapardon* cited the following cases as further support for its holding: *Piper v. Harnischfeger Corp.,* 170 F.R.D. 173, 175 (D.Nev.1997) (no written report required if treating physician's testimony as to "causation, future treatment, extent of disability and the like" is based on knowledge acquired in the course of treatment); *Baker v. Taco Bell Corp.,* 163 F.R.D. 348, 349 (D.Colo.1995) (opinions of treating physicians as to the cause of an injury or degree of future injury based on an examination of the patient "are a necessary part of the treatment of the patient."); *Wreath v. U.S.,* 161 F.R.D. 448, 449 (D.Kan.1995) ("The determining issue is the

scope of the proposed testimony"); and *Mangla v. University of Rochester,* 168 F.R.D. 137, 139 (W.D.N.Y.1996) ("A treating physician's testimony ... is based on the physician's personal knowledge of the examination, diagnosis, and treatment of a patient and not from information acquired from outside sources[,]" thus no report is required).

Here, consistent with the cases above, Dr. Figuereo testified that he needed to know the cause of the injury to determine the appropriate treatment for it. That testimony alone was more than sufficient to establish that his causation opinion was formed during the physician's participation in the relevant events of the case, i.e., what the physician personally saw and did during the course of the patient's treatment. There was no evidence that he formed any his opinions at the request of Plaintiff's counsel. Therefore, the Plaintiff was not required to provide a Rule 26 expert report from Dr. Figuereo to offer his causation opinions at trial, whether on the stand or in his medical records. The district court's decision to exclude such testimony was erroneous, and Costco may not rely on the ruling as a basis to ask this Court to *ex post facto* deem the causation opinions in the medical records inadmissible.

# VII. CONCLUSION

For the reasons set forth above, this Court should quash the Order granting

Costco's Motion for Judgment as a Matter of Law and restore the Jury's verdict in

its entirety.

Respectfully submitted,

EATON & WOLK PL
Attorneys for Appellant
2665 So. Bayshore Drive, Suite 609
Miami, Florida 33133
Telephone: (305) 249-1640
Telecopier: (786) 350-3079
Email:    deaton@eatonwolk.com
               dschwartz@eatonwolk.com
               cgarcia@eatonwolk.com

By:   s/*Douglas F. Eaton*
          Douglas F. Eaton
          Florida Bar No: 0129577
          Daniel R. Schwartz
          Florida Bar No: 124512

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations set forth in FRAP 32(a)(7)(B) and contains 5,062 words.

# CERTIFICATE OF SERVICE

The undersigned certifies that on **August 9, 2023**, I electronically filed the foregoing document with the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by CM/ECF system:

**Alyssa Mara Reiter, Esq.,** WICKER SMITH, et al., *Attorneys for Appellee*, 2800 Ponce de Leon Boulevard, Suite 800, Coral Gables, FL 33134; areiter@wickersmith.com; ncambo@wickersmith.com; jgonzalez2@wickersmith.com; HMolliner@wickersmith.com.

By: _____
            Douglas F. Eaton
            Florida Bar No: 0129577